UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CONOR JAMES HARRIS,<br><br>                    Petitioner,<br>        v.<br><br>RENEE BAKER, et al.,<br><br>                    Respondents. | Case No. 3:14-cv-00516-RCJ-WGC<br><br>ORDER |

This habeas matter under 28 U.S.C. § 2254 comes before the court on respondents' motion to dismiss petitioner Conor James Harris' counseled first-amended petition as untimely (ECF No. 21). Harris opposed (ECF No. 25), and respondents replied (ECF No. 35). As discussed below, this petition must be dismissed as untimely.

I. **Background**

On April 1, 1997, Harris, then a seventeen year-old high school student, was charged in connection with the murder of his former girlfriend, also seventeen (exhibit 2).[1] On August 14, 1997, Harris pleaded guilty pursuant to a written plea agreement to first-degree murder with use of a deadly weapon. Exh. 9. The state district court sentenced Harris to life in prison without the possibility of parole and a consecutive life in prison without the possibility of parole for the deadly weapon enhancement. Exh. 16. Judgment of conviction was entered on September 23, 1997. *Id.*

---

[1] Exhibits referenced in this order are exhibits to petitioner's first-amended petition, ECF No. 14, and are found at ECF Nos. 15 and 26.

1

Harris did not file a direct appeal.  Almost fourteen years later, on August 3, 2011, Harris filed a *pro per* motion to withdraw guilty plea on the basis that it was not knowing and voluntary.  Exh. 27.  The state district court denied the motion.  Exh. 31.  Harris appealed, and the Nevada Supreme Court appointed counsel.  Exh. 37.  The Nevada Supreme Court issued an order of limited remand, remanding the matter to district court "to hold a hearing and determine whether the equitable doctrine of laches precludes consideration of the motion."  Exh. 43.

The state district court held a hearing, and filed its order denying the motion to withdraw the guilty plea on April 8, 2013.  Exh. 45.  On April 30, 2013, the Nevada Supreme Court ordered the parties to file supplemental briefs limited to issues related to the district court order entered on remand.  Exh. 48.  On October 16, 2013, the Nevada Supreme Court affirmed the state district court's denial of the motion and its determination that laches precluded consideration of Harris' motion.  Exh. 55.  Remittitur issued on November 13, 2013.  Exh. 56.

Harris dispatched his federal habeas petition for filing about October 2, 2014 (ECF No. 6).  This court appointed counsel, and counsel filed a first-amended petition on October 19, 2015 (ECF No. 14).  Respondents have moved to dismiss the petition as time-barred (ECF No. 21, pp. 4-5).  They also argue that two of the three grounds in the petition are unexhausted.  *Id.* at 5-7.

II.   **Legal Standards & Analysis**

**a. The Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations**

AEDPA went into effect on April 24, 1996 and imposes a one-year statute of limitations on the filing of federal habeas corpus petitions.  28 U.S.C. § 2244(d).  The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct

2

review. 28 U.S.C. § 2244(d)(1)(A). Further, a properly filed petition for state postconviction relief can toll the period of limitations. 28 U.S.C. § 2244(d)(2).

Here, the parties do not dispute that the AEDPA one-year statute of limitations expired on October 23, 1998 (ECF No. 21, p.8; ECF No. 25, p. 15). Harris did not file anything in state court before that date to challenge his conviction or sentence, and he did not file his federal petition until October 2, 2014. This federal petition is, therefore, time-barred, unless Harris is entitled to equitable tolling of the statute of limitations. In his counseled response to the motion to dismiss the petition as time-barred, Harris argues that he is actually innocent of first-degree murder, and he also argues in the alternative that he is entitled to statutory and equitable tolling (ECF No. 25).

**b. Actual innocence**

In his first-amended petition, Harris raises three grounds for relief. In ground 1 he argues that his guilty plea was not entered knowingly, intelligently, and voluntarily in violation of his Fifth, Eighth and Fourteenth Amendment right to due process, equal protection and to a reliable sentence (ECF No. 14, pp. 7-14). Specifically, he contends that he is actually innocent of first-degree murder with use of a deadly weapon because he was incapable of forming the requisite intent to commit first-degree murder.

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006). In *McQuiggin v. Perkins*, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." 133 S.Ct. 1924, 1928 (2013). The Court emphasized that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a

3

reasonable doubt.'" *Id.*; quoting *Schlup*, 513 U.S., at 329; *see House*, 547 U.S. at 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). Additionally, a petitioner can demonstrate actual innocence by showing that, in light of subsequent case law, he cannot, as a legal matter, have committed the alleged crime. *Bousley v. United States*, 523 U.S. 614, 616 (1998); *Vosgien v. Persson*, 742 F.3d 1131, 1135 (9th Cir. 2014).

In assessing a *Schlup* gateway claim, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U.S. at 332; *McQuiggin*, 133 S.Ct. at 1936 ("[f]ocusing on the merits of a petitioner's actual-innocence claim and taking account of delay in that context, rather than treating timeliness as a threshold inquiry, is tuned to the rationale underlying the miscarriage of justice exception–*i.e.*, ensuring that federal constitutional errors do not result in the incarceration of innocent persons" (internal quotations and citations omitted).

In his opposition to the motion to dismiss, Harris states that at the time he entered into the plea agreement, he was being seen and evaluated by psychiatrist Dr. Jerry Howle (ECF No. 25, pp. 10-12; exh. 17). Dr. Howle opined at the sentencing that Harris suffered from severe personality disorder or borderline personality disorder exacerbated by a childhood skull fracture, concussion and post-concussion syndrome and extensive and regular physical and verbal abuse by his mother as well as by playing high school football after being advised never to play a contact sport after the head injury. Dr. Howle testified that Harris was in a dissociative state at the time of the killing and that Harris also could have suffered a seizure or experienced some sort of neurological event. *Id.*

Harris now argues that he is actually innocent of first-degree murder with use of a deadly weapon because he was incapable of forming the requisite intent to commit first-degree murder (ECF No. 25, pp. 9-10). He contends that evidence presented during the plea colloquy and sentencing demonstrates that he was legally insane at the time

4

this crime was committed and therefore is actually innocent. Harris points out that in order for him to be convicted of first-degree murder in Nevada, the State had to prove beyond a reasonable doubt that he acted with willfulness, deliberation, and premeditation. *Byford v. State*, 994 P.2d 700 (Nev. 2000). He also notes that at the time he was charged, Nevada had abolished insanity as an affirmative defense. Subsequently, in 2001, the Nevada Supreme Court ruled that the state legislature violated federal and state constitutional due process when it abolished insanity as a complete defense to a criminal offense. *Finger v. State*, 27 P.3d 66 (Nev. 2001).

Respondents point out that Harris argues only legal innocence; he does not argue that he is factually innocent (ECF No. 35, pp. 2-3). Harris has failed to present any new, reliable evidence showing that it is more likely than not that no reasonable juror would have convicted him, as required to pass through the *Schlup* gateway. The state-court record reflects that both when Harris entered his guilty plea and at sentencing Harris and defense counsel were well aware of Dr. Howle's opinion that Harris suffered from a personality disorder and was in a dissociative state at the time of the killing. As discussed above, Harris' mental health and Dr. Howle's evaluation and opinion were discussed and/or testified to at both the change of plea hearing and the sentencing hearing. This evidence is simply not the type of evidence contemplated by *Schlup*. There is no indication that the fact that under state law at the time insanity was not a complete defense to a crime would in any way have prevented Harris from presenting evidence of incompetence at trial. That is, he argues now that he was incapable of forming the intent to commit first-degree murder; but he has not demonstrated that he would have been prevented from arguing this to a jury at the time he entered his guilty plea.

Harris urges that under the Ninth Circuit case *Vosgien v. Persson* he can demonstrate that he is actually innocent because at the time he pleaded guilty insanity was unavailable in Nevada as an affirmative defense. 742 F.3d 1131 (9th Cir. 2014).

5

However, *Vosgien* is readily distinguishable. In that case, the petitioner pleaded guilty to compelling prostitution. Subsequent Oregon case law clarified that compelling prostitution applied only to defendants who induce someone to "engage in prostitution with others." *Id*. at 1135. Vosgien had been charged with bribing his daughter to procure sexual favors for himself. Thus he could not, as a legal matter, have committed the crime of compelling prostitution based on the facts upon which he was convicted. *Id*. Harris tries to bootstrap an actual innocence claim to the Nevada Supreme Court's decision in *Finger v. State* that the legislature had unconstitutionally abolished insanity as an affirmative defense. 27 P.3d 66 (Nev. 2001). There is nothing in the record to suggest that Harris could not, as a legal matter, have committed the crime of first-degree murder based on the facts upon which he was convicted. Nor is there anything to suggest that the lack of the availability of insanity as an affirmative defense in any way prevented Harris from raising his mental state as a defense. The court concludes that petitioner's gateway claim of actual innocence fails.

### c. Equitable tolling

Alternatively, Harris argues that the AEDPA statute of limitations should be tolled in this case. A petitioner may be entitled to equitable tolling if he can show "'(1) that he has been pursuing his right diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2009)(quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

6

Ignorance of the one-year statute of limitations does not constitute an extraordinary circumstance that prevents a prisoner from making a timely filing. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling").

Harris argues that he is entitled to equitable tolling because extraordinary circumstances stood in his way, namely: (1) the restrictive conditions of his confinement; (2) his young age and lack of legal knowledge; and (3) his inability to obtain his legal files (ECF No. 25).

Harris included an affidavit if support of his opposition to the motion to dismiss. Exh. 58. He sets forth the following: at the time of his incarceration, he was eighteen years old and had never been to prison before; he did not understand that he could appeal his conviction and sentence. When he entered prison in 1997, he had no part of his case file, and therefore, filed a motion for transcripts in 2001, which the state district court denied. At some point in 2007, another inmate told him about the *Finger* decision, and he started to research ways to appeal his case in light of that decision. He filed requests for court records and transcripts in 2008 and in 2009, which the court denied. He reached out to a friend and they both endeavored to find an attorney to represent Harris. After deciding not to retain an attorney, Harris began "exhaustively" researching his case about 2010. His research indicated that he could file a motion to withdraw a guilty plea at any time. Harris was able to piece together part of his case file from one of his former attorneys and his family. From about August 2008, to March 2009, he was housed in Ely State Prison (ESP) units where he was required to use the kite system to request legal materials and had no physical access to the law library. *Id.*

Respondents argue that Harris has failed to demonstrate diligence in pursuing federal habeas relief (ECF No. 35). Harris contends that he did not understand that he could appeal his conviction and sentence. This is belied by his affidavit, in which Harris

7

states that his counsel wrote him a letter after he was sentenced and told Harris that he saw no basis for appeal and thought that Harris would be unsuccessful in any appeals. Exh. 58 ¶ 5. Harris states that in 2001, he filed the first request for his court records because another inmate told him he should try to appeal. Yet after the motion was denied, he took no further action whatsoever until another inmate told him about the *Finger* decision in 2007 (*see also* exh. 27, Harris' motion to withdraw guilty plea, p. 21: "Until about four years ago [when he learned of the *Finger* decision] petitioner was still under the faulty assumption that his former counsel was correct in that there was no hope."). Both directly and through a friend, he was able to contact numerous attorneys over about four years about taking his case. Still he filed nothing aside from the records requests until about thirteen years after he was sentenced. Even assuming, *arguendo*, that the statute of limitations should be tolled until the time that Harris learned of the *Finger* decision in 2007 (a proposition with which this court disagrees), he failed to file his motion to withdraw guilty plea until August 2011.[2]

Harris has failed to demonstrate that extraordinary circumstances prevented him from timely filing a federal petition. He has not shown that his confinement was so restrictive that it prevented him from filing anything in his state case (aside from motions for state-court records or his case file) from 1997 until 2011 or that it prevented him from filing a federal habeas petition until October 2014. Notably, he filed three motions for state-court records in 2001, 2008 and 2009. He fails to explain how the lack of his legal files prevented him from taking any action whatsoever in his case until he filed the first motion for his state-court records in 2001. Lack of legal sophistication and/or ignorance of the statute of limitations do not constitute extraordinary circumstances that prevent a

---

[2] Harris also argues that he is entitled to statutory tolling of the period of time from when he filed his motion to withdraw guilty plea on August 3, 2011, until the Nevada Supreme Court remittitur issued on November 13, 2013 (ECF No. 25, pp. 15-17; 28 U.S.C. § 2244(d)(2)). Even assuming, *arguendo*, that Harris is correct, it would be of no moment because he has failed to demonstrate that equitable tolling should apply to either the total period of time between his judgment of conviction and his filing the motion to withdraw guilty plea, or the period of time between when he alleges he learned of the *Finger* decision in 2007, and his filing of the motion to withdraw guilty plea in 2011.

8

petitioner from making a timely filing; moreover, the record belies Harris' claims of complete ignorance of the legal process. *See Rasberry*, 448 F.3d at 1154. This court is mindful that Harris was only eighteen years old and had no prior arrest or prison record when he was sentenced. However, having reviewed the record, and as the threshold necessary to trigger equitable tolling is very high, the court concludes that Harris has not met his burden of demonstrating that he has been pursuing his rights diligently and some extraordinary circumstances prevented him from timely filing his federal petition. *Holland*, 560 U.S. at 649; *Miles*, 187 F.3d at 1107; *Miranda*, 292 F.3d at 1066. Accordingly, Harris' federal habeas petition is dismissed as time-barred.

### III. **Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-51 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* Pursuant to Rule 11(a) of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed. This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability,

9

and determines that none meets the standard. The court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss the first-amended petition (ECF No. 21) is **GRANTED**.  The petition is **DISMISSED** as untimely.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner's motion for leave to file an opposition in excess of the page limit (ECF No. 27) is **GRANTED**.

**IT IS FURTHER ORDERED** that respondents' motion for extension of time to file a reply in support of the motion to dismiss (ECF No. 34) is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: This 6th day of March, 2017.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE